**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IVAN HERRERA, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

v.

ST URBAN NYC LLC,
d/b/a SAINT URBAN,
FRANK VITIELO, and
JARED IAN STAFFORD-HILL,

Defendants.

---

Case No:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff IVAN HERRERA ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, ST URBAN NYC LLC d/b/a "SAINT URBAN" (the "Corporate Defendant"), JARED IAN STAFFORD-HILL and FRANK VITIELO (the "Individual Defendants" and collectively with the Corporate Defendant, the "Defendants") and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from

Defendants: (1) unpaid wages due to time shaving, (2) unpaid minimum and overtime wages due to invalid tip credit deductions, (3) liquidated damages, and (4) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages due to time shaving, (2) unpaid minimum and overtime wages due to invalid tip credit deductions, (3) unpaid wages due to unpaid call in pay, (4) liquidated damages, (5) statutory penalties due to WTPA violations, and (6) attorneys' fees and costs.

3. Plaintiff further alleges that, pursuant to NYLL § 196-b and the Earned Safe and Sick Time Act ("ESSTA"), Defendants violated his statutory rights by failing to provide Plaintiff with earned sick leave and thereby denying him the corresponding compensation.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

**PARTIES**

6. Plaintiff HERRERA, for all relevant time periods, was a resident of Bronx County, New York.

7. Corporate Defendant ST URBAN NYC LLC d/b/a "SAINT URBAN" is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 43 East 20th Street, New York, NY 10003. Its address for service of process is 45 East 22nd Street, Apt 58, New York, NY 10010.

8. Individual Defendant JARED IAN STAFFORD-HILL is the owner and principal of Corporate Defendant ST URBAN NYC LLC. Individual Defendant JARED IAN STAFFORD-HILL exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. At all relevant times, Individual Defendant JARED IAN STAFFORD-HILL—by himself or through managerial staff—exercised the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members. By himself or through managerial staff, Individual Defendant JARED IAN STAFFORD-HILL would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensation, or terminating or hiring such employees. At all relevant times, Individual Defendant JARED IAN STAFFORD-HILL exercised functional control over Corporate Defendant's business and its financial operations.

9. Individual Defendant FRANK VITIELO is the owner and principal of Corporate Defendant ST URBAN NYC LLC. Individual Defendant FRANK VITIELO exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. At all relevant times, Individual Defendant FRANK VITIELO—by himself or through managerial staff—exercised the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members. By himself or through managerial staff, Individual Defendant FRANK VITIELO would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensation, or terminating or hiring such employees. At all relevant times, Individual

Defendant FRANK VITIELO exercised functional control over Corporate Defendant's business and its financial operations.

10. At all relevant times, Corporate Defendant ST URBAN NYC LLC was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

11. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

12. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all front-of-house and back-of-house employees, including but not limited to food runners, servers, counterpersons, hostesses, waiters, bussers, bartenders, porters, cashiers, dishwashers, kitchen staffs, food preparers, delivery persons, cooks, and line cooks, among others, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

13. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including overtime, due to Defendants' time shaving. Further, with respect to tipped employees, Defendants were not entitled to compensate Plaintiff and FLSA Collective Plaintiffs at a tip credit minimum wage hourly rate because they failed to satisfy all statutory requirements for taking a tip credit.

14. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

**RULE 23 CLASS ALLEGATIONS**

15. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all front-of-house and back-of-house employees, including but not limited to food runners, servers, counterpersons, hostesses, waiters, bussers, bartenders, porters, cashiers, dishwashers, kitchen staffs, food preparers, delivery persons, cooks, and line cooks, among others, employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class" or Class Members).

16. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

17. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of

tipped employees ("Tipped Subclass"), who also number more than forty (40). Plaintiff is a member of both the Class and the Tipped Subclass.

18. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices by Defendants, as alleged herein, of (i) failing to pay wages for all hours worked, including overtime hours, due to Defendants' illegal time shaving, (ii) failing to compensate for short breaks lasting less than twenty (20) minutes, (iii) failing to provide earned sick days, (iv) failing to pay call-in pay premiums, (v) failing to provide proper wage and wage hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law, and (vi) failing to provide proper wage and hour statements, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures of Defendants.

19. With regards to the Tipped Subclass, Plaintiff and the Tipped Subclass suffered from Defendants' failure to pay proper minimum wages and proper overtime rates due to Defendants' invalid tip credit policy because Defendants (i) failed to properly provide tip credit notices at dates of hiring and annually thereafter, (ii) deducted tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) claimed a tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for continuous periods of time which exceeded 30 minutes, (iv) failed to provide proper wage statements clearly indicating tip

credit allowances for each payment period, and (v) failed to accurately keep track of daily tips earned and maintain records thereof.

20. Plaintiff is both able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

21. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided

by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

22. Defendants violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

23. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and the Class within the meaning of the NYLL and ESSTA;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding hiring and terminating Plaintiff and Class Members;

e) Whether Defendants accurately tracked the number of hours earned for sick leave under the ESSTA;

f) Whether Defendants properly compensated Plaintiff and Class Members for their earned sick leave;

g) Whether Defendants paid Plaintiff and Class Members overtime premiums at one-and-one half times their regular hourly rate for all hours worked in excess of forty (40) each workweek;

h) Whether Defendants compensated Plaintiff and Class Members for short breaks of twenty (20) minutes or less;

i) Whether Defendants accurately tracked the amounts of tips earned by Plaintiff and the Tipped Subclass each day and maintained records thereof;

j) Whether Defendants properly provided written notice to Plaintiff and Tipped Subclass, in their native language, that Defendants were taking a tip credit;

k) Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% or two hours of their work shift;

l) Whether Defendants properly compensated Plaintiff and Class Members with their call-in premiums; and

m) Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law; and

n) Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law.

## STATEMENT OF FACTS

24. On May 9th, 2025, Plaintiff HERRERA was hired by Defendants to work as a Runner at Defendants' "Saint Urban". Plaintiff's employment with Defendants lasted until November 14th, 2025, when Plaintiff was terminated without reason by Defendants.

25. Plaintiff's hours varied depending on the closing time of Defendants' restaurant. Throughout his employment, Plaintiff was typically scheduled to work thirty seven and a half (37.5) to forty seven and a half (47.5) hours per week. Plaintiff worked approximately five (5) days per week, with each shift lasting seven and a half (7.5) to nine and a half (9.5) hours.

*Unpaid Wages Due to Time Shaving*

26. Throughout Plaintiff's employment, Plaintiff was given approximately fifteen-minute break per shift. Although Defendants were required by law to pay Plaintiff, FLSA Collective Plaintiffs, and Class Members for short rest breaks of under twenty (20) minutes, Defendants did not compensate them for such breaks. Rather, Defendants required that Plaintiff, FLSA Collective Plaintiffs, and Class Members clock out.

27. Defendants violated the FLSA's "bright line time test" pursuant to 29 C.F.R. § 785.18, under which Defendants were required to compensate Plaintiff for breaks lasting from five (5) minutes to about twenty (20) minutes:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time. (*Mitchell v. Greinetz*, 235 F. 2d 621, 13 W.H. Cases 3 (10th Cir., 1956); *Ballard v. Consolidated Steel Corp., Ltd.*, 61 F. Supp. 996 (S.D. Cal. 1945)).

28. The same is true under NYLL, since "[t]he NYLL incorporate[s] [the] FLSA['s] standards for determining whether time worked is compensable time." *Perkins v. Bronx Lebanon Hosp. Ctr.*, 2016 U.S. Dist. LEXIS 151364, at *3 n.6 (S.D.N.Y. Oct. 31, 2016) (internal quotation marks and citation omitted)); *see also Martin v. Waldbaum, Inc.*, 1992 U.S. Dist. LEXIS 16007, at *6 (S.D.N.Y. Jan. 5, 2012) ("the Court finds, as a matter of law, that breaks of less than twenty minutes are compensable") (emphasis added); *Espinoza v. 953 Assocs. LLC,* 280 F.R.D. 113, 121, n 34 (S.D.N.Y. 2011) ("Rest periods of short duration must be counted as hours worked.") (citing 29 C.F.R. § 785.18); *Sec'y United States DOL v. Am. Future Sys.*, 873 F.3d 420, 432 (3d Cir. 2017) ("[T]he government should not be in the business of determining what employees do on short work breaks, much less attempting to evaluate which short breaks merit or do not merit compensation. . . . [E]mployers and employees are best served by the bright line time test currently provided in Section 785.18.") (citation omitted).

29. At all relevant times, FLSA Collective Plaintiffs and Class Members were subjected to similar practices and was not compensated for short breaks.

30. Through their unlawful time-shaving practices, Defendants injured Plaintiff, FLSA Collective Plaintiffs, and Class Members by categorically reducing their compensable time every week.

*Unpaid Minimum and Overtime Wages due to Invalid Tip Credit*

31. Throughout his employment, Plaintiff was paid at the prevailing tip credit minimum wage. However, Defendants were not entitled to claim any tip credit allowance from Plaintiff under the FLSA or NYLL because Defendants: (i) failed to provide proper notice that a tip credit was being claimed, (ii) claimed a tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties in excess of two (2) hours or twenty percent (20%) of the total hours each shift, (iii) claimed tip credit for all continuous periods of time of non-tipped, directly supporting work exceeding thirty (30) minutes, (iv) failed to record the tip credit allowance taken on periodic wage statements given to Plaintiff, and (v) failed to accurately keep track of daily tips earned and maintain records thereof. Similarly, Defendants are not entitled to claim any tip credit allowance from the Tipped Subclass members.

32. Plaintiff never received notice that tip credit was being claimed by Defendants. Similarly, FLSA Collective Plaintiffs, and the Tipped Subclass members never received any tip credit notice.

33. Plaintiff was required to engage in at least two (2) hours or more than twenty percent (20%) of his working time in non-tipped related activities, including, but not limited to, polishing silverware, polishing glassware, cleaning the restaurant, folding napkins, maintaining the restaurants ice supply, washing dishes, picking up chairs and tables (hereinafter the “non-tipped duties”). Similarly, the Tipped Subclass members spent an average of two (2) hours or twenty percent (20%) of the total hours worked each shift on non-tipped duties. Despite Plaintiff, FLSA

Collective Plaintiffs, and the Tipped Subclass members engaging in at least two (2) hours of non-tipped work, Defendants improperly claimed tip credit for all hours worked.

34. Defendants knowingly and willfully operated their business with a policy of not paying the FLSA minimum wage or the New York State minimum wage, and the proper overtime rate thereof for hours worked over forty (40) in a workweek, to Plaintiff, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass Members. Defendants were not entitled to claim any tip credits under the FLSA and the NYLL.

*Unpaid Wages due to Unpaid Call-In Pay*

35. At all relevant times, Defendants failed to pay call-in pay premiums to Plaintiff and Class Members for all their instances of reporting to work for a scheduled shift which lasted less than three (3) hours, in violation of the NYLL.

36. Throughout his employment, Plaintiff was sent home three (3) times a month by Defendants after reporting to work for a scheduled shift. Class Members were similarly regularly sent home early after reporting to work for scheduled shifts for less than three (3) hours.

37. However, Defendants failed to pay Plaintiff and Class Members their owed call-in pay premiums for every workday lasting less than three (3) hours.

38. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay call-in pay premiums to Plaintiff and Class Members.

*Sick Leave Violation Claims*

39. During Plaintiff's employment, Defendants engaged in adverse actions against Plaintiff and Class Members by refusing to provide any sick leave, in violation of the NYLL and the ESSTA.

40. Defendants maintained a general policy of not providing any sick leave—paid or unpaid—to employees. Over the course of his employment, Plaintiff HERRERA was not permitted by Defendants to take sick leave even when provided with doctors' notes.

41. Defendants did not offer any of their employees any paid time off ("PTO"). While the ESSTA does allow Employers to require that Employees use PTO for their ESSTA eligible sick time if they wish to get paid, and to deny them pay for sick leave taken after all of the employee's PTO has been used, it also provides that if no PTO is offered, or if the PTO offered does not cover an equal or greater amount of time than is required by the ESSTA, then the employer must allow their employees access to paid time off as described by the law. Therefore, there is no system or policy under which Defendants could have reasonably denied Plaintiff's requests by making the argument that she had voluntarily utilized her PTO to other purposes and was not entitled to pay for her sick days.

42. Defendants' refusal to provide paid sick leave to Plaintiff and Class Members violates their rights under the NYLL and the ESSTA.

*Violations Under the WTPA*

43. At all relevant times, Plaintiff and Class Members never received an accurate wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

44. In failing to provide wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements

might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

45. New York Court continue to find sufficient standing to support standing to support these claims. One such Court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

46. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

47. By failing to report Plaintiff's and Class Members' hours, Defendants were able to reduce employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employees' W-2 form, as such information is derived from the information

on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

48. Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants' provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants intentional hiding of that information, Plaintiff and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

49. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with proper wage notices and accurate wage statements, in violation of the NYLL.

50. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and the Class in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

51. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

52. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

53. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

54. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

55. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs wages for all hours worked, due to time shaving.

56. At all relevant times, Defendants had a policy and practice that failed to pay proper wages to Plaintiff and a subclass of FLSA Collective Plaintiffs, due to an invalid tip credit. Defendants were not entitled to claim any tip credits from Plaintiff and FLSA Collective Plaintiffs under the FLSA.

57. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation (including tips) paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and,

if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

58. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, when Defendants knew or should have known such was due.

59. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

60. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

61. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, and liquidated damages.

62. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

63. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

64. At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

65. Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them for all hours worked, due to time shaving, in violation of the New York Labor Law.

66. At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members all wages, including overtime due to invalid tip credit, in direct violation of the NYLL. Defendants were not entitled to claim any tip credit from Plaintiff or Class Members under the NYLL.

67. Defendants failed to compensate Plaintiff and Class Members with their call-in pay premiums, in direct violation of the NYLL.

68. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with proper wage notices, at date of hiring and at dates of all wage changes thereafter, as required under NYLL.

69. Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

70. Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wages, including overtime, due to time shaving, unpaid wages, including overtime, due to invalid tip credit, unpaid call-in pay premiums, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action, pursuant to the New York Labor Law.

## COUNT III

## VIOLATION UNDER THE EARNED SICK AND SAFE TIME ACT

71. Plaintiff realleges and incorporates all the above allegations as against all Defendants, as if fully set forth herein.

72. Defendants knowingly and willfully failed to provide Plaintiff and Class Members with sick leave as required under the NYLL and the ESSTA.

73. At all relevant times, Defendants are employers covered by NYLL's sick leave provision as an "employer with less than ninety-nine (99) employees must provide up to forty (40) hours of annual safe and sick time each calendar year." NYLL § 196-b(1)(b).

74. Defendants are required to give employees sick leave upon oral or written request for a "mental or physical illness, injury, health condition of such employee. . .regardless of whether such illness, injury, or health condition has been diagnosed or requires medical care at the time that such employee requests such leave." NYLL § 196-b(4)(a).

75. At all relevant times, Defendants employ five or more employees and are employers covered by the ESSTA's sick leave provision as an "'employer' as defined in subdivision (3) of section 190 of the labor law." ESSTA § 20-912.

76. Defendants are required to give paid sick time to their employees, upon request. The ESSTA provides that:

> All employers that employ five or more employees, all employers of one or more domestic workers, and any employer of four or fewer employees that had a net income of one million dollars or more during the previous tax year, shall provide paid safe/sick time to their employees in accordance with the provisions of this chapter. An employer shall pay an employee for paid safe/sick time at the employee's regular rate of pay at the time the paid safe/sick time is taken, provided that the rate of pay shall not be less than the highest applicable rate of pay to which the employee would be entitled pursuant to subdivision 1 of section 652 of the labor law, or any other applicable federal, state, or local law, rule, contract, or agreement. Such rate of pay shall be calculated without allowing for any tip credit or tip allowance set forth in any federal, state, or local law, rule, contract, or agreement.

ESSTA § 20-913(a).

77. Due to Defendants' NYLL and ESSTA violations, Plaintiff and Class Members are entitled to all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, and ESSTA;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages due to time shaving, due under the FLSA and the NYLL;

d. An award of unpaid wages, including overtime, due to invalid tip credit deductions, due under the FLSA and the NYLL;

e. An award of call-in pay premiums due under the NYLL;

f. An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

h. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

i. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to provide sick leave pursuant to the NYLL and the ESSTA;

j. An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

k. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

l. Designation of this action as a class action pursuant to F.R.C.P. 23;

m. Designation of Plaintiff as Representative of the Class, including the Tipped Subclass; and

n. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: June 18, 2026
New York, New York

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

By: /s/ *C.K. Lee*
C.K. Lee, Esq.